53 F.3d 339
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff-Appellant,
v.
UNITED STATES of America; United States Department of
Interior; Bureau of Reclamation; Marshall
Associated Contractors, Inc.; Columbia
Excavating, Defendants-Appellees.
 No. 93-35827.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1995.
Decided April 14, 1995.
 
 Before: HALL, O'SCANNLAIN, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Safeco Insurance Company of America ("SAFECO") appeals from the district court's judgment dismissing its claim for lack of subject matter jurisdiction. We have jurisdiction over this timely appeal and hereby affirm.
 
 STANDARD OF REVIEW
 
 3
 We review de novo whether the district court had subject matter jurisdiction. North Star Alaska v. United States, 9 F.3d 1430, 1432 (9th Cir.1993) (en banc), cert. denied, 114 S.Ct. 2706 (1994).
 
 DISCUSSION
 
 4
 In order to proceed in the district court on its suit against the United States, SAFECO must establish that the court has subject matter jurisdiction. As the United States is a defendant, subject matter jurisdiction requires that SAFECO establish both the existence of a federal question under 28 U.S.C. Sec. 1331 and a waiver of sovereign immunity by the United States. North Side Lumber Co. v. Block, 753 F.2d 1482, 1484 & n. 3 (9th Cir.), cert. denied, 474 U.S. 919 (1985). While SAFECO's claim may arise under the laws of the United States within the meaning of Sec. 1331, we affirm because the United States has not consented to be sued in the district court.
 
 
 5
 SAFECO correctly argues that even if its claim is essentially contractual, the questions of Pfeifle's authority to enter into a binding settlement clearly involve the interpretation of federal statutes and regulations. Similarly, the entire suit arises against the backdrop of federal procurement regulations and the Miller Act. As a result, the district court had federal question jurisdiction under Sec. 1331. See North Side Lumber, 753 F.2d at 1484 (claim that enforcing contract would violate federal statute arises under federal law for purposes of Sec. 1331); Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed.Cir.1994) ("Even where a case is contractual ... the presence of issues which require the interpretation of federal law and regulation necessarily give rise to federal questions.") (citing Conille v. Secretary of Housing and Urban Devel., 840 F.2d 105, 109 (1st Cir.1988)).
 
 
 6
 The existence of a federal question does not, however, end matters. SAFECO must also establish a valid waiver of sovereign immunity. This it cannot do.
 
 
 7
 SAFECO seeks a declaratory judgment that the January 1985 settlement of the dispute among itself, Marshall, and the government was validly entered into by Pfeifle and binding upon the Bureau. SAFECO contends that its claim is a permissible challenge to agency action under the sovereign immunity waiver contained in Sec. 702 of the Administrative Procedures Act. 5 U.S.C. Sec. 702. That section provides:
 
 
 8
 A person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.
 
 
 9
 (emphasis added).
 
 
 10
 Thus, Sec. 702 is a broad consent to suit by the federal government in cases in which the relief sought is other than money damages.[1] The sovereign immunity issue in this case effectively revolves around the question whether SAFECO's claim falls within the exception to Sec. 702's waiver of immunity which is highlighted above. The government contends that because of the nature of SAFECO's claim, the Tucker Act "impliedly forbids the relief" which SAFECO seeks. SAFECO, in turn, argues that no other statute applies and this action is permissible under Sec. 702's general waiver of immunity.
 
 
 11
 SAFECO's claim falls within the ambit of the Tucker Act, 28 U.S.C. Sec. 1491(a)(1), as interpreted by this court. In North Star Alaska, the en banc court reconciled earlier conflicting authority and made clear that the Tucker Act is a statute which waives sovereign immunity and "impliedly forbids" equitable or declaratory relief against the government on contract claims. 9 F.3d at 1432. Thus, when suing the government on a contract claim, a plaintiff's relief is limited to money damages in the Court of Federal Claims, in the district court for amounts under $10,000, or in an agency board of contract appeals under the CDA. See North Side Lumber, 753 F.2d at 1484-85 (Tucker Act is "a limited waiver of sovereign immunity and a limitation on the remedies available in actions on government contracts").
 
 
 12
 This court observed in two earlier cases involving contract issues that the Tucker Act does not in all instances "preclude review of agency action when the relief sought is other than money damages." Laguna Hermosa Corp. v. Martin, 643 F.2d 1376, 1379 (9th Cir.1981); Rowe v. United States, 633 F.2d 799, 802 (9th Cir.1980), cert. denied, 451 U.S. 970 (1981). Thus, Laguna Hermosa held that the "Tucker Act does not impliedly forbid the issuance of a declaratory judgment [by the district court] stating that Laguna possesses contract rights against the United States," for purposes of determining whether the government's refusal to honor the purported contract was itself a violation of federal statute. 643 F.2d at 1379. Similarly, Rowe held that the district court had jurisdiction to issue a declaratory judgment concerning whether the plaintiffs had a "valid existing [contract] right" with the government, for the purposes of the Alaska Native Claims Settlement Act. 633 F.2d at 801. North Side Lumber construed these cases narrowly, holding that they stand for the proposition that the district court has jurisdiction to declare the existence of contract rights, but not to inquire into their content. 753 F.2d at 1485-86.
 
 
 13
 North Star Alaska recognized the continuing vitality of Laguna Hermosa and Rowe, but affirmed North Side Lumber's limitation of them, holding that the Tucker Act permits only "claims for equitable relief which 'rest[ ] at bottom on statutory rights.' " 9 F.3d at 1432 (quoting North Side Lumber, 753 F.2d at 1485. Thus, a district court may grant equitable relief relating to a contract, if the contractual issues are only incidental to statutory questions. SAFECO contends that its claim falls within this "statutory rights" category. It is clear, however, that this exception is very narrow. See Price v. United States Gen. Serv. Admin., 894 F.2d 323, 324 n. 3 (9th Cir.1990) (Rowe and Laguna Hermosa limited to their own facts); Sharp v. Weinberger, 798 F.2d 1521, 1524 n. 3 (D.C.Cir.1986).
 
 
 14
 SAFECO goes to great lengths in an attempt to demonstrate that its claim is completely independent of the original procurement contract between Marshall and the United States, and that it simply seeks a declaration regarding the powers and actions of the Bureau's Contracting Officer under federal statutes and procurement regulations. This attempt to characterize the merits of this case as noncontractual is not persuasive. Whether a claim is contractual or statutory for Tucker Act purposes " 'depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).' " Spectrum Leasing Corp. v. United States, 764 F.2d 891, 893 (D.C.Cir.1985) (quoting Megapulse, Inc. v. Lewis, 672 F.2d 959, 968 (D.C.Cir.1982)). Under this analysis, SAFECO's claim is contractual in nature.
 
 
 15
 We agree that Safeco's current claim can largely be divorced from the merits of Marshall's dispute with the Bureau over the underlying construction contract. Safeco's claim is nevertheless contractual because it is "at bottom" based upon the settlement agreement among itself, Marshall, and the government. The case does involve the interpretation of federal procurement statutes and regulations, but Safeco essentially seeks a declaration that Pfeifle had the power to execute the settlement and, further, that the parties in fact entered into a binding agreement. Thus, in its complaint, Safeco asked for a declaration that:
 
 
 16
 1. The Bureau of Reclamation terminated Marshall's contract for the convenience of the government on January 18, 1985, and its action has been binding on the Bureau from and after January 23, 1985, when Marshall communicated acceptance of the terms of the termination;
 
 
 17
 2. The Bureau's refusal to be bound by the convenience termination in accordance with the decision of its Contracting Officer in January, 1985, was and is arbitrary, capricious, an abuse of discretion and otherwise in violation of law ...
 
 
 18
 Complaint at p. 7. The prayer for relief thus sounds in breach of contract; it points to no independent federal statutes which would be violated by the government's refusal to honor the settlement, as was the case in Laguna Hermosa and Rowe. SAFECO cannot therefore avail itself of the limited niche which those cases carve out of the Tucker Act's general preclusion of district court jurisdiction over equitable claims.
 
 
 19
 SAFECO further argues that we should find that the district court has jurisdiction over its claim because it will otherwise be left with no forum in which to vindicate its rights. The government contends that a Miller Act surety has numerous avenues through which it can participate in the CDA process, so that SAFECO could enforce its rights under the original construction contract. SAFECO, for its part, cites persuasive authority to the effect that sureties have no standing under the CDA. The issue, however, is irrelevant: on remand from the en banc court in North Star Alaska, the panel subsequently rejected the precise argument that "the district court cannot refuse jurisdiction if there is no alternative forum available to hear North Star's claim." North Star Alaska v. United States, 14 F.3d 36, 38 (9th Cir.), cert. denied, 114 S.Ct. 2706 (1994). If SAFECO has no alternative forum, this is because the government has not waived its sovereign immunity protection; any unfairness is simply a result of the notion that the sovereign can be sued only with its consent.
 
 CONCLUSION
 
 20
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Where a plaintiff seeks money damages against the United States, jurisdiction and sovereign immunity are governed by the Tucker Act, 28 U.S.C. Sec. 1491(a)(1), which vests jurisdiction in the Court of Federal Claims, and the Little Tucker Act, 28 U.S.C. Sec. 1346(a)(2), which generally vests concurrent jurisdiction in the district courts for claims of under $10,000. Claims for money damages relating to government procurement contracts are subject to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. Sec. 602 et seq., which vests concurrent jurisdiction in the Court of Federal Claims and the various agency boards of contract appeals, while removing the district courts' Little Tucker Act jurisdiction